IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 18-cr-30029 |
| ) | |
| **HAMOUD HAZAM,** ) | |
| ) | |
| **Defendant.** ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court is Defendant Hamoud Hazam's Amended Motion for Compassionate Release (d/e 73) requesting a reduction in his term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A). For the reasons set forth below, the motion is DENIED.

### I. BACKGROUND

On April 9, 2019, Defendant pled guilty to one count of conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 846, 841(b)(1)(C), and 841(a)(1), two counts of distribution of a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and one count of possession with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and

(b)(1)(C).  Minute Entry, Apr. 9, 2019.  On January 24, 2020, the undersigned District Judge sentenced Defendant to concurrent terms of 72 months' imprisonment on each count to be followed by concurrent terms of 3 years of supervised release on each count. Minute Entry, Jan. 24, 2020.  Defendant is currently serving his sentence at the Federal Medical Center (FMC) in Lexington, Kentucky, and has a projected release date of June 18, 2023. Bureau of Prisons, Find an Inmate, https://www.bop.gov/inmateloc/ (last accessed June 16, 2020).

On June 3, 2020, Defendant filed a pro se motion for compassionate release (d/e 69) pursuant to 18 U.S.C. § 3582(c)(1)(A).  On June 10, 2020, Defendant filed an amended motion for compassionate release (d/e 73).  Defendant requests compassionate release due to his medical condition and the COVID-19 pandemic.

Defendant proposes to live with his wife and children if he is released from custody.  The United States Probation Office addressed Defendant's request for compassionate release in a Memorandum (d/e 74). The Probation Office concluded that the proposed residence would be an acceptable living situation for

Defendant.

On May 15, 2020, the Government filed a Response to Defendant's Motion for Compassionate Release (d/e 75). The Government argues that the Court should deny Defendant's motion for compassionate release because Defendant has not exhausted his administrative remedies and because Defendant has not been diagnosed with any underlying medical condition which places him at greater risk of serious injury or death were he to contract COVID-19. The Government also notes that the Bureau of Prisons (BOP) has implemented procedures designed to curb the spread of the virus in its facilities.

On May 16, 2020, the Court held a video conference hearing on Defendant's amended motion. Defendant appeared by telephone from FMC Lexington. As of May 16, 2020, BOP reports that FMC Lexington has 26 confirmed inmate cases of COVID-19 and 2 confirmed staff member cases. See Federal Bureau of Prisons – COVID-19 Cases, https://www.bop.gov/coronavirus/ (last accessed June 16, 2020). BOP further reports that 232 inmates and 8 staff members at FMC Lexington who were previously diagnosed with COVID-19 have recovered.

## II. ANALYSIS

As a general matter, the Court is statutorily prohibited from modifying a term of imprisonment once it has been imposed. See 18 U.S.C. § 3582(c). However, several statutory exceptions exist, one of which allows the Court to grant a defendant compassionate release if certain requirements are met. See 18 U.S.C. § 3582(c)(1)(A).

Section 603(b)(1) of the First Step Act amended the statutory language at 18 U.S.C. § 3582(c)(1)(A). See First Step Act of 2018, Pub. L. No. 115-391, 132 Stat 5194. Prior to the First Step Act, the Court could grant a defendant compassionate release only if the Director of the BOP filed a motion seeking that relief. With the enactment of the First Step Act, 18 U.S.C. § 3582(c)(1)(A) now allows an inmate to file with the Court a motion for compassionate release, but only after exhausting administrative review of a BOP denial of the inmate's request for BOP to file a motion or waiting thirty days from when the inmate made his or her request, whichever is earlier. The statute now provides as follows:

> The court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to

> appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

There is some dispute in this case as to whether Defendant has exhausted his administrative remedies. Defendant states that he submitted two requests for compassionate release to the Warden of his facility, the first of which he claims to have submitted two months ago. See Am. Mot. Compassionate Release 5. Defendant claims that one of his requests was denied and that the Warden never responded to the other. Id. The Government states that "Defendant Hazam has not submitted a request for compassionate release in accordance with 18 U.S.C. § 3582(c)(1)(A)." Resp. 6. Regardless, having considered the relevant factors set forth in 18 U.S.C. § 3553(a) the Court concludes that Defendant has not

established that extraordinary and compelling reasons warrant a reduction in his term of imprisonment.

The spread of COVID-19 has presented extraordinary and unprecedented challenges for the country and poses a serious issue for prisons. Due to the infectious nature of the virus, the Centers for Disease Control and Prevention (CDC) and state governments have advised individuals to practice good hygiene and social distancing and isolation. Socially distancing can be difficult for individuals living or working in a prison.

Defendant is thirty-eight years old, and he has not been diagnosed with any underlying medical conditions that the CDC has specifically identified as increasing the risks presented by COVID-19. See Interim Clinical Guidance for Management of Patients with Confirmed Coronavirus Disease, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html (last accessed June 16, 2020). Defendant has been diagnosed with a latent tuberculosis infection and prediabetes. Am. Mot. Compassionate Release 1; Resp. 3-4.

While the CDC recognizes diabetes as a comorbidity that may

increase the risk of serious injury or death from COVID-19, the same is not true of prediabetes. See People Who Are At Higher Risk for Serious Illness, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last accessed June 16, 2020). Furthermore, as the Government notes in its response, it is not a certainty that Defendant's prediabetes will progress to diabetes so long as Defendant adopts the lifestyle changes, including diet and exercise, on which Defendant has been counseled by BOP medical staff. See Resp. 3-4; BOP Medical Records, d/e 76 (noting that Defendant was "[c]ounseled on diet, exercise, [and] weight for prediabetes").

The same is true of Defendant's latent tuberculosis (TB) infection diagnosis. According to information from the CDC cited by the Government, a latent TB infection is distinct from an active TB infection in that persons with latent TB infections cannot transmit the disease and do not have any symptoms. Resp. 3. Moreover, much like with prediabetes, it is not a certainty that a latent TB infection will progress to an active TB infection. The CDC states that "without treatment, about 5 to 10% of infected persons will develop TB disease at some time in their lives." Resp. 3 (quoting

Fact Sheet – The Difference Between Latent TB Infection and TB Disease, CDC, available at https://www.cdc.gov/tb/publications/factsheets/general/ltbiandactivetb.htm (last accessed June 16, 2020).  Defendant, however, is currently receiving treatment, which should even further reduce the chances that his latent TB infection will progress to active TB disease.  The BOP medical records filed by the Government indicate that Defendant was started on a course of treatment in April 2020 consisting of the medications Isoniazid, Pyridoxine, and Rifapentine, which is designed to treat Defendant's latent TB infection.  See BOP Medical Records, d/e 76.  Finally, Probation's Memorandum indicates that Defendant was tested for COVID-19 on May 26, 2020, with negative results.  Probation's Mem. 1.

    The Court recognizes that there are many confirmed cases of COVID-19 at FMC Lexington, the facility where Defendant is housed.  According to the Government, however, BOP has implemented rigorous procedures designed to mitigate the spread of the virus in its facilities.  BOP figures also indicate that the number of confirmed cases at FMC Lexington appears to be decreasing as inmates and staff who previously tested positive recover from the

illness.

Further, Defendant has served just over one third of his sentence imposed for conspiring to distribute, distributing, and possessing with the intent to distribute a large quantity of synthetic cannabinoids. See PSR ¶ 49, d/e 50 (holding Defendant accountable for 13.88 kilograms of synthetic cannabinoids). A firearm was also recovered from the residence attached to Defendant's convenience store out of which the synthetic cannabinoids had been distributed. Defendant received a sentencing enhancement due to the presence of the firearm and an additional enhancement based on his role as an organizer, leader, manager, or supervisor in the conspiracy. The 72-month sentence imposed by the Court less than six months ago was well below the guidelines range of 108 to 135 months.

While the Court notes Defendant's lack of a criminal history and his proposed residence which the Probation Office has found to be acceptable, the Court also notes that if Defendant were to be released he plans to return to running the same store out of which he was distributing synthetic cannabinoids. The Court, taking all the relevant facts into account, finds that Defendant has not

established that there exist extraordinary and compelling reasons that warrant a reduction in his term of imprisonment.

### III. CONCLUSION

For the reasons set forth above, Defendant Hamoud Hazam's Amended Motion for Compassionate Release (d/e 73) and Defendant's pro se Motion for Compassionate Release (d/e 69) are DENIED.  This ruling does not preclude Defendant from filing another motion for compassionate release in the future if circumstances change.

ENTER:  June 16, 2020

*/s/ Sue E. Myerscough*
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE
